IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | | |
|---|---|---|
| GARLOCK SEALING TECHNOLOGIES, LLC; GARRISON LITIGATION MANAGEMENT GROUP, LTD., | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 3:14-cv-137 |
| BENJAMIN SHEIN; BETHANN KAGAN; SHEIN LAW CENTER, LTD., | ) ) ) | |
| Defendants. | ) | |

## ORDER

**THIS MATTER** is before the Court upon Defendants' Motion to Transfer Venue (Doc. No. 43) and Memorandum in Support (Doc. No. 44), Plaintiffs' Response in Opposition (Doc. No. 48), and Defendants' Reply (Doc. No. 54). This is one of four cases currently pending before this Court that originated in bankruptcy as adversary proceedings. Plaintiffs brought these claims against a number of lawyers who allegedly engaged in fraud in settling their clients' mesothelioma claims with Garlock. The allegations echo findings made by the bankruptcy judge, Hon. George R. Hodges, in conjunction with his estimation order of January 10, 2014. *See In re Garlock Sealing Techs., LLC*, 504 B.R. 71 (Bankr. W.D.N.C. 2014). Judge Hodges conducted a hearing for the purpose of making a reasonable and reliable aggregate estimate of Garlock's liability for future and present mesothelioma claims, and after hearing evidence from fifteen settled cases, found that Garlock's prior mesothelioma settlements were not a reliable predictor of liability because misrepresentation had infected them:

> [T]he fact that *each and every one of them* contains such demonstrable misrepresentation is surprising and persuasive. More important is the fact that the

1

pattern exposed in those cases appears to have been sufficiently widespread to have a significant impact on Garlock's settlement practices and results.

*Id.* at 85. That court went on to describe the plaintiffs' lawyers' conduct in these cases as forming a "startling pattern of misrepresentation." *Id.* at 86. These findings apparently led the bankruptcy estate to bring the instant lawsuits, which allege claims for common law fraud and civil conspiracy as well as violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968.

On July 23, 2014, Hon. Max O. Cogburn issued an order withdrawing the reference to bankruptcy in these cases. (*See* Case No. 3:13-cv-464, Doc. No. 90). Judge Cogburn found that these were non-core proceedings which could not be tried in bankruptcy court without the consent of all the parties; as that consent was not forthcoming, Judge Cogburn removed the reference pursuant to 28 U.S.C. § 157(d). These cases were subsequently assigned to the undersigned on October 24, 2014.

## **DISCUSSION**

Having successfully removed the reference to bankruptcy court, Defendants now seek transfer to the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1412.[1] That section provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for convenience of the parties." 28 U.S.C. § 1412. Generally, the party moving for change of venue under this section bears the burden of proof and must show by a preponderance of the evidence that either the interest of justice or convenience of the parties would be served by transfer. *Coffey Creek Assocs. Ltd. P'ship v. Guardian Prot.*

---

[1] The Court notes that the law in the Fourth Circuit is not entirely settled as to whether 28 U.S.C. § 1412 or 28 U.S.C. § 1404 is the appropriate statute under which to seek transfer of a case that is "related to" a case under Title 11, as this one is. This Court has previously grappled with this issue and determined that the § 1412 analysis is most appropriate. *See Coffey Creek Assocs. Ltd. P'ship v. Guardian Prot. Servs., Inc.*, 2010 WL 1849023, at *5 (W.D.N.C. May 7, 2010). The Court adopts that same reasoning here, but also notes that the outcome would not be different under the § 1404 analysis.

2

*Servs., Inc.*, 2010 WL 1849023, at *5 (W.D.N.C. May 7, 2010). A sufficient showing of either justifies transfer. *Id.*

As to the "interest of justice" prong, courts typically consider (1) the economic administration of the bankruptcy estate; (2) the presumption in favor of trying proceedings related to a bankruptcy case in the court in which the bankruptcy is pending; (3) judicial efficiency; (4) ability to receive a fair trial; (5) the state's interest in having local controversies decided within its borders; (6) enforceability of any judgment rendered; and (7) the plaintiff's original choice of forum. *See id.* (citing *In re Velocita Corp.*, 285 B.R. 188, 190 (Bankr. M.D.N.C. 2002)). The Court finds that nearly all of these factors weigh heavily against transfer.

To begin, the Court finds that there are substantial efficiencies to be gained in one court hearing all of these actions. Plaintiffs' claims, while asserted against different Defendants, concern the same basic conduct—alleged "double dipping" on the part of plaintiffs' lawyers, who made claims against Garlock in the state court system (and denied or minimized exposure to other asbestos products) while also filing claims against other asbestos companies' trusts in the bankruptcy system. Likewise, the claims asserted are nearly identical—common law fraud, civil conspiracy, and RICO violations. If Defendants' respective motions to change venue are granted, three or four separate district courts would have to assess the complex litigation history associated with these claims, and separately evaluate the pattern of misconduct alleged by Plaintiffs. Additionally, Plaintiffs' federal RICO claims would be interpreted under the case law of three or possibly four separate circuits, creating a heightened risk of inconsistent outcomes. Having this Court consider all of these cases at once resolves these issues.[2]

---

[2] Defendants assert that the state law claims would be most appropriately considered by a district within the state in question; however, this Court frequently interprets and applies various forms of state law and is confident in its ability to do so.

The pendency of Plaintiffs' bankruptcy in this district further supports the denial of Defendants' motion. Other courts have held that centralizing related proceedings in the district where the bankruptcy is pending benefits the economic administration of the estate. *See In re Velocita Corp.*, 285 B.R. 190-91 ("[I]t seems clear that judicial efficiency and economical administration of the bankruptcy estate will be promoted if the nine pending actions were all pending in the same venue, rather than debtors having to litigate substantially the same issues in nine different proceedings in nine different locations."). Likewise, having these claims centralized in this district promotes the economic administration of the underlying bankruptcy, as Plaintiffs would otherwise be forced to litigate substantially the same issues in three or four separate districts at substantial cost. Finally, this Court gives great weight to Plaintiffs' choice of forum. *See, e.g.*, *Datasouth Computer Corp. v. Three Dimensional Techs., Inc.*, 719 F. Supp. 446, 451 (W.D.N.C. 1989); *Commercial Equip. Co., Inc. v. Barclay Furniture Co.*, 738 F. Supp. 974, 976 (W.D.N.C. 1990); *BellSouth Telecomms., Inc. v. N.C. Utilities Comm'n*, 3:05-cv-345, 2005 WL 2416204 (W.D.N.C. 2005). The Court finds no reason to diminish that choice here. The remaining factors either weigh neutrally or are inapplicable to the circumstances of this case.[3]

The Court has also considered the "convenience of the parties" prong. Factors relevant to this analysis include: (1) location of the parties; (2) ease of access to necessary proof; (3) convenience of witnesses; (4) availability of subpoena power; and (5) expenses related to obtaining witnesses. *Coffey Creek*, 2010 WL 1849023, at *7 (citing *RFF Family P'ship, LP v. Wasserman*, 2010 WL 420014, at *7 (N.D. Ohio 2010)). Defendants argue at length that most of the witnesses and materials pertinent to this dispute are located within Pennsylvania, and that the

---

[3] Defendants argue that Pennsylvania has a strong interest in this case because it primarily concerns Pennsylvania businesses and professionals. But North Carolina has an equally strong interest in that Plaintiffs are North Carolina businesses which will likewise be affected by the outcome of these proceedings.

events underlying this action nearly all occurred in that state. The Court has carefully considered these contentions and finds that they do not justify transfer, especially given the substantial efficiencies to be gained by centralizing these cases in this district. As the concerns Defendants raise would be most pertinent to the trial phase, the Court may consider revisiting this issue at the conclusion of all pre-trial proceedings. That notwithstanding, and for the additional reasons outlined in Plaintiffs' Response, the Court finds that Defendants have not shown that transfer is justified, and the motion will be denied.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Transfer Venue (Doc. No. 43) is **DENIED.**

**SO ORDERED.**

Signed: March 9, 2015

Graham C. Mullen
United States District Judge